**J. M. TATTON et ux., Appellants,**

**v.**

**ARANSAS COUNTY et al., Appellees.**

No. 13928.

Court of Civil Appeals of Texas.

San Antonio.

June 6, 1962.

Rehearing Denied July 5, 1962.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston for appellants.

Small, Small & Craig, Austin, for appellees.

BARROW, Justice.

This is an appeal by J. M. Tatton and wife, Virginia H. Tatton (plaintiffs below), from the judgment of the 36th District Court of Aransas County denying appellants relief from an assessment for ad

valorem taxes on real estate for the year 1960. Appellants paid the full amount of tax under protest and filed this suit against Aransas County and its duly elected officials.

The jury found: the fair market value of the farm land on January 1, 1960, was $200.00 per acre; there were 805.77 acres of waste land of the fair market value of $35.00 per acre, and that the fair market value of the ranch and pasture land was $100.00 per acre. These valuations were substantially the same as those established by the Board of Equalization. The trial court overruled motion for judgment non obstante veredicto and rendered judgment denying plaintiffs relief.

Appellants have duly perfected this appeal upon four points: 1. There is no evidence of probative value to support the verdict of the jury. 2. The answers of the jury are contrary to the great weight and overwhelming preponderance of the evidence. 3. The trial court erred in refusing to submit their eighteen requested special issues. Appellants' fourth point was not urged after this Court's refusal to file a Supplemental Transcript.

In view of the first two points, a brief summary of the material evidence is necessary. Appellants are owners of 32,065 acres of land in Aransas County, which land is made up of these categories: pasture land, farm land, and waste land, due to tidal action overflowing same. The minerals were assessed separately and only the surface valuation is in controversy in this suit.

Appellants timely filed their 1960 rendition, which is summarized as follows:

| | |
|---|---|
| Pasture land | 28,772.04 acres |
| Farm land | 2,488.18 acres |
| Waste land | 805.77 acres |
| Total assessed valuation | $353,945.00 |
| Tax | 7,364.06 |

The fair market value of the Ranch as rendered by appellants is $1,769,725.00, and the rendered valuation was based on the County's ratio of assessed valuation to fair market value for the year 1960 of 20%. This valuation was placed on the tax roll by the Assessor-Collector and submitted to the Board of Equalization. After a hearing, as provided by law, at which appellants appeared and presented evidence, the Board increased the valuation, and a tax of $14,202.24 was assessed.

Appellants produced several witnesses to justify their valuation: (1) Lewis, a real estate broker and appraiser, (2) Norris, a real estate broker, and (3) Legge, a land appraiser; all of whom had been employed by appellants to appraise said property.

Lewis made an extensive survey, and made many soil tests on the ranch. He found no suitable farm land; determined that 4,510.85 acres was waste land, which he valued at $5.00 per acre, and valued the remaining 27,554 acres at $65.00 per acre for pasture land, making a total valuation of $1,813,564.00. Norris testified that none of the land was suitable for farming, and valued all the land at $45.00 per acre. Legge valued the surface estate at $1,955,000.00.

Appellants also produced the witnesses Cochran, Abney and Gillespie, who testified concerning the possible use of the ranch. Cochran testified that this land was not suitable for a subdivision, and the latter two, that the land could not be profitably farmed.

The County had previously employed Thomas Y. Pickett & Co., Inc., for over ten years, to assist the Board of Equalization in appraising oil and gas properties. In 1959, the County entered into a contract for Pickett to assist the Board in appraising the real estate, as well as oil and gas properties, to try and equalize all property at 20% of the market value. Such a contract is valid and not under attack here. Pritchard & Abbott v. McKenna, Tex., 350 S. W.2d 333.

The County produced three witnesses in support of the valuation placed by the Board of Equalization: (1) County Judge

Wendell, (2) Sheriff Shivers, formerly Tax Collector, and (3) Taylor, a real estate appraiser employed by Pickett & Company.

Judge Wendell testified that he was familiar with the ranch in question; that he was familiar with land values in Aransas County, and that the ranch valuation was in conformity with other comparable land. He placed a valuation of $115.00 an acre on the ranch land, $200.00 an acre on the farm land, and $35.00, on the waste land.

Sheriff Shivers testified that he was familiar with land values in the County, and that the values placed on the Tatton Ranch were in line and uniform with other farm and ranch land. Taylor testified that he had inspected the property and that in his opinion the farm land was worth $250.00 an acre; the pasture land $125.00 per acre, and the waste land $30.00 per acre. He also testified concerning the sales price of eighty pieces of property which were assessed at about twenty per cent of their respective sales price.

■ Appellants assert in their first point that the testimony is only a scintilla of evidence on the valuation question submitted to the jury, and that as a matter of law their valuation as rendered was correct. On viewing the evidence in the most favorable light in support of the findings of the jury, as we are required to do, we find there is evidence to support said findings and we therefore overrule this point. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

■ By their second point, appellants attack the quality and type of appraisal of County's witnesses as compared to those of appellants. Appellants do not complain that these witnesses were not legally qualified to express valuation appraisals. County's witnesses, being qualified, the jury determined their credibility and the weight to be given to their testimony, as well as that of the witnesses produced by appellants. We have examined all the evidence

in the case and find that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Appellants' third point complains of the failure of the trial court to submit certain special issues. Attached to the brief are eighteen unnumbered issues. In the transcript there are twenty requested issues grouped together, but nine of said group are incomplete in that the owners of the respective tracts of land under inquiry are not identified. (Their names are supplied in the issues attached to appellants' brief, and apparently they are owners of residential properties sold after January, 1960, which Cochran testified were assessed at less than 20% of their sales price.) These twenty issues covered several different matters and were separately acted on by the trial court. The point complaining of the failure to submit eighteen issues is multifarious and too general to direct our attention to the error complained of by appellants. Rule 418, Texas Rules of Civil Procedure; Texas Emp. Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893; Hudspeth v. Hudspeth, Tex.Civ.App., 206 S.W.2d 863. Said point asserts that all of said issues relate to an illegal plan or scheme of taxation of the County, and by giving a liberal construction to the briefing rules, we have considered said point and find that the trial court did not err in refusing to submit said issues.

■ The rules concerning the burden of the taxpayer in this type of suit have been set forth by the Supreme Court. Appellants must show a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden, and that as a result of said plan appellants have suffered substantial injury. It is not sufficient to show, comparatively, that, in isolated instances, property of equal or greater value than that in suit was valued at less. State v. Federal

Land Bank of Houston, 160 Tex. 282, 329 S.W.2d 847; Whelan v. State, 155 Tex. 14, 282 S.W.2d 378; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569.

Appellants assert that overall the owners of oil and gas interests who had been complaining, paid less tax in 1960 than in prior years. However, there is no evidence other than that this was a result of the program to equalize all taxes at a valuation of 20% of market value. This would not raise evidence of illegal scheme, under the above authorities. The fact that several residential lots were undervalued, as testified to by appellants' witness Cochran, would not raise an issue of illegal scheme. Bernhardt v. Port Arthur Independent School Dist., 159 Tex. 488, 324 S.W.2d 163. In any event, this did not result in any substantial injury to appellants. State v. Federal Land Bank of Houston, supra.

The judgment of the trial court is affirmed.